WILBERT KING YOUNG, JR.,

    Plaintiff,

    v.                                         Case No. 19-CV-464

BREW CITY,

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Wilbert King Young, Jr., appearing *pro se*, sues his former employer Brew City Pizza, Inc. (improperly named as "Brew City"), alleging that he was suspended and ultimately terminated from his employment due to his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Brew City has moved for summary judgment dismissing Young's complaint. For the reasons explained below, Brew City's motion is granted.

### UNDISPUTED FACTS

    If a party is proceeding *pro se*, as Young is, and the opposing party files a motion for summary judgment, the movant must provide the *pro se* party a copy of Fed. R. Civ. P. 56 and Civil L. R. 7, as well as include a statement alerting the *pro se* party that any factual assertion in the movant's documentary evidence will be accepted by the Court as being true if the *pro se* party fails to present his own contradicting admissible documentary evidence. Brew City properly complied with Civil L. R. 56(a) in its motion for summary judgment. (Docket # 28.)

Despite receiving this warning, Young has failed to file "a concise response to the moving party's statement of facts," as required by Civil L. R. 56(b)(2)(B), or any admissible documentary evidence whatsoever. While Young appends several unauthenticated exhibits to his response brief (Docket # 40-1), this evidence cannot be considered on summary judgment. As the Seventh Circuit has instructed:

> It bears repeating that the purpose of summary judgment is to determine whether there is any genuine issue of material fact in dispute and, if not, to render judgment in accordance with the law as applied to the established facts. The facts must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence.

*Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). Although Young appears *pro se*, this does not excuse him from presenting admissible evidence to oppose Brew City's summary judgment motion. Because Young failed to respond to Brew City's statement of facts, I will consider all of the defendant's proposed findings of fact to be uncontested for purposes of the motion. Civil L.R. 56(b)(4). *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("A district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.") (internal quotations and citations omitted).

Brew City owns and operates over thirty Domino's Pizza franchises in and around Milwaukee, Wisconsin; Madison, Wisconsin; and Rockford, Illinois. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 7, Docket # 34.) Young, an African-American man, began working as a Delivery Driver at Brew City's Domino's Pizza franchise located at 6111 W.

Mequon Road, Mequon, Wisconsin (the "Mequon Store"), in May 2016. (*Id.* ¶ 12.) In his role as a Delivery Driver, Young was responsible for, among other things, delivering Domino's pizza and other food and beverage products to customers, assisting with preparing pizzas for delivery, and maintaining general upkeep of the store, including taking out the trash and doing dishes. (*Id.* ¶ 13.) Young was also one of the employees regularly responsible for making bank deposits on behalf of the Mequon Store. (*Id.* ¶ 14.)

In October or November 2016, Young began training part-time to become an Assistant Store Manager. (*Id.* ¶ 16.) Young was trained primarily by Ashley Dye, then the Mequon Store's General Manager, and Courtney Pate, an Assistant Store Manager. (*Id.* ¶ 17.) Beginning at that time, Young estimates that he spent approximately half of each workday training to become an Assistant Store Manager and the other half making deliveries to the Mequon Store's customers. (*Id.* ¶ 18.)

At all times during his employment, Young was subject to the policies and procedures set forth in the Mequon Store's Employee Handbook (the "Handbook"). (*Id.* ¶ 15.) Pursuant to the Handbook, any employee of the Mequon Store that is going to be absent from a scheduled shift is required to: (1) contact a manager regarding the absence a minimum of two hours in advance of the start of his or her shift; and (2) locate another employee to cover the shift in his or her absence. (*Id.* ¶ 19.) Any employee who fails to show up for a scheduled shift without excuse and/or fails to comply with the notification requirement is deemed to have engaged in a "No Call/No Show" and may be subject to immediate suspension or termination. (*Id.* ¶ 20.)

In December 2016, Young had planned a short out-of-town vacation and obtained approval from Dye to take several days off work for the trip. (*Id.* ¶ 22.) While Young was

3

supposed to return to work on December 11, 2016, he failed to show up for his scheduled shift. (*Id.* ¶ 23.) Young asserts that he texted Dye to tell her that he would not be at work for his scheduled shift because he missed his return flight home; however, Dye does not recall receiving notice from Young that he would be absent from his scheduled shift. (*Id.* ¶¶ 24–25.) Young also failed to locate another employee to cover his shift. (*Id.* ¶ 24.) Thus, Young was suspended for failing to show up to work without an appropriate excuse. (*Id.* ¶ 21.) Young agrees that there was a "misunderstanding" between him and Dye regarding his return date to work. (*Id.* ¶¶ 28–29.)

On January 4, 2017, Brew City asked Young to deliver a bank deposit to an Associated Bank in Mequon, the location where Young usually made deposits on Brew City's behalf. (*Id.* ¶ 30.) At 11:30 a.m. on January 4, Michael Edwards, then an Assistant Store Manager at the Mequon Store, placed a bank deposit bag into a breadbox and handed it to Young to deliver to the bank. (*Id.* ¶ 31.) After making a pizza delivery, Young arrived at the bank at approximately 12:05 p.m. (*Id.* ¶ 33.) The bank teller counted the deposit and determined that the amount of money in the deposit bag did not match what was listed on the bank deposit slip—the deposit was supposed to be for approximately $850.00, but there was only $350.00 in the deposit bag. (*Id.* ¶ 34.) The bank teller inputted the correct amount of the deposit, $350.00, into the bank's online system. (*Id.* ¶ 35.)

The next day, on January 5, 2017, Young traveled to Atlanta for a planned vacation. (*Id.* ¶ 36.) On or about January 16, 2017, Andrew Boisvert, the Supervisor for the Mequon Store, called the police after learning that $500.00 was missing from the deposit that Young made on January 4. (*Id.* ¶ 37.) The police opened an investigation into the matter. (*Id.* ¶¶ 38–41.) During the course of the investigation, Dye told police that on the evening of

January 3, she had taken the bank deposit bag out of the store's safe, counted the money, and determined that there was approximately $851.00 in the deposit bag. (*Id.* ¶ 42.) Dye verified the deposit slip, returned the money to the deposit bag, and resecured the bag in the safe. (*Id.* ¶ 43.) Store surveillance footage showed Dye counting the money and placing it in the deposit bag and surveillance footage also showed other employees who had handled the deposit did not take any money from the deposit bag prior to Young taking possession of it. (*Id.* ¶¶ 44–45.) Edwards told police that he did not open the deposit bag or place it anywhere else prior to giving it to Young. (*Id.* ¶ 47.)

Police also interviewed Young. (*Id.* ¶ 48.) Young was questioned as to why it took him approximately thirty minutes to get from the Mequon Store to the bank when the two locations were only three to four miles apart. (*Id.* ¶¶ 39, 49–51.) Young told police that he made one pizza delivery on the way to the bank on January 4; however, he said it took only seven minutes to get from the Mequon Store to the delivery location and only seven or eight minutes to get from the pizza delivery location to the bank. (*Id.* ¶¶ 49–51.) Although Young had previously made bank deposits for Brew City on multiple occasions, Young told Edwards on the morning of January 4 that he was uncomfortable making the deposit because he did not want to be accused of theft. (*Id.* ¶ 52.) Mequon police arrested Young for theft of the missing $500.00 at the conclusion of his interview. (*Id.* ¶ 53.) At the time of his arrest, Brew City believed Young had stolen the missing money. (*Id.* ¶ 54.)

Shortly after Young's arrest, he was formerly charged with theft in Ozaukee County Circuit Court. (*Id.* ¶ 55.) Young did not contact Brew City at any time after being charged and/or arrested on January 17, 2017 and acknowledges that no one from Brew City ever sent him a termination notice or verbally communicated to him that he was terminated. (*Id.*

5

¶¶ 56, 58.) Pursuant to Young's signature bond signed on March 14, 2017, the court prohibited Young from having any contact with the Mequon Store. (*Id.* ¶ 57.) Young's criminal case proceeded to trial in the Fall of 2017, and Young was ultimately acquitted of the theft charge. (*Id.* ¶ 59.)

Young sued Brew City in April 2019, alleging discrimination based on race with respect to his December 2016 suspension and his separation from employment in early 2017. (*Id.* ¶ 61.) Young identified two delivery drivers as comparators in relation to his suspension from work—Michael and Cody. (*Id.* ¶ 62.) Young believes that Michael may have missed a scheduled work shift or was late for a shift and was not suspended, but admits that he does not actually know whether, in fact, Michael had missed a scheduled shift. (*Id.* ¶ 63.) Young alleges that Cody was not suspended after failing to work a scheduled shift, but admits that Cody was unable to work the shift because of an emergency situation—he had gotten into a car accident on his commute to work. (*Id.* ¶ 64.)

Young identified three potential comparators related to his purported termination—Zakia, Marissa, and Michael. (*Id.* ¶¶ 67–73.) Young concedes that none of these three individuals were arrested or charged in connection to their alleged incidents, and that Zakia is also African American. (*Id.* ¶¶ 67, 69, 71, 73.) Young admits that no one at Brew City made any racial comments to him in relation to his suspension and has not pointed to any purportedly race-based behaviors; however, he assumes that his race must have played a part in his suspension. (*Id.* ¶¶ 65–66.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

# ANALYSIS

Young asserts that he was suspended from work in December 2017 and was terminated from his employment in January 2017 due to his race. (Docket # 1.) Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To defeat summary judgment on his discrimination claim, Young needs to submit evidence from which a reasonable juror could conclude that Brew City suspended and/or fired him because of his race. *Ortiz v. Werner Enter. Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). The evidence "must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* While *Ortiz* disposes of the distinction between "direct" and "indirect" evidence, it does not affect the *McDonnell Douglas* burden shifting framework. *Id.* at 766; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, Young has the initial burden of establishing that (1) he is a member of a protected class, (2) he performed reasonably on the job in accord with his employer's legitimate expectations, (3) despite his reasonable performance, he was subjected to an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably by the employer. *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). If Young satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to Young to submit evidence that the employer's explanation is pretextual. *Id.*

8

Young argues that he was a good employee with no complaints, write-ups, suspensions, thefts, or violation of any company policies whatsoever. (Pl.'s Br. in Opp. at 2, Docket # 40-2.)[1] Young believes that he was singled out by Brew City because of his race and that Brew City treated similarly situated employees more favorably. (*Id.* at 2–3.) He argues that Brew City cannot articulate a legitimate, non-discriminatory reason for any adverse action taken against him. (*Id.* at 2.)

Young puts forth no evidence beyond his own suppositions that race played a role in his suspension and alleged termination. Young's bare assertions of covert racial animus are insufficient to raise a factual dispute. *See Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) (finding the plaintiff's subjective belief insufficient to create a genuine issue of material fact). As to his suspension, Young argues that Michael and Cody, two delivery drivers outside of Young's protected class, violated store policies but failed to experience any adverse employment action. (Pl.'s Br. in Opp. at 2.) To qualify as similarly situated, a fellow employee must be "directly comparable to the plaintiff in all material respects." *Walker v. Bd. of Regents of the Univ. of Wis. Sys.*, 410 F.3d 387, 396 (7th Cir. 2005). The similarly situated analysis calls for a "flexible, common-sense" examination of all relevant factors. *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007). Plaintiff must be "similarly situated with respect to performance, qualifications, and conduct," and must show that the other employee "engaged in similar conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Radue v.*

---

[1] Young filed a brief in opposition to Brew City's summary judgment motion on July 9, 2020. (Docket # 40.) Brew City filed its reply brief on July 24, 2020. (Docket # 42.) On August 17, 2020, Young filed an additional brief in opposition to the summary judgment motion. (Docket # 43.) Brew City moves to strike this brief. (Docket # 44.) Civil L. R. 56 does not allow the non-moving party to file a sur-reply brief. To the extent Young wished to file a sur-reply brief, he should have sought leave from the Court. Young's sur-reply brief is stricken.

*Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). The purpose of the "similarly-situated" comparator employee is to ensure that all other variables are discounted so that discrimination can be inferred. *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011). The comparators must be similar enough that any differences in their treatment cannot be attributed to other variables. *Id.* Generally, a plaintiff must show that the other employee: "1) dealt with the same supervisor; 2) was subject to the same standards; and 3) engaged in similar conduct." *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2008).

Young argues that while Cody called into work due to an emergency, he failed to find another driver to take his shift, yet suffered no consequence. (Pl.'s Br. in Opp. at 2.) As to Michael, Young argues that he was accused of theft and verbally disrespected Dye, but was only offered to switch stores. (*Id.* at 3.) Young has failed to show that either of these employees is similarly situated. As to Michael, Young does not allege that he missed a shift, as Young did. And as to Cody, Young admits that Cody was involved in a motor vehicle accident on the way to work. (DPFOF ¶ 64.) While, like Young, Cody failed to find a fellow employee to cover his shift, the fact he was involved in a car accident vastly distinguishes Young's situation from Cody's. Young, returning late from a vacation, had the time and opportunity to at least attempt to fill his shift. Cody, in contrast, had been in a car accident. The differentiating circumstances make Michael and Cody insufficient comparators.

As to Young's purported termination, he admits that after his arrest, he stopped coming to work and was never sent a termination notice or verbally told he was terminated from his employment. (*Id.* ¶¶ 56, 58.) Thus, it is not clear that Young was actually

10

terminated as opposed to voluntarily quitting. Even assuming, however, that Young was terminated, he has not shown sufficient comparators outside of his protected class that were treated more favorably. As to Zakia, she is also African American and thus not outside Young's protected class. (*Id.* ¶ 67.) As to the remaining comparators—Marissa and Michael—Young is unaware of the specific circumstances of either's alleged theft. (*Id.* ¶¶ 70–73.) Furthermore, Young admits that none of his alleged comparators were arrested, charged, or prosecuted for their alleged thefts. (*Id.*) Thus, these are not sufficient comparators to demonstrate discrimination.

Even if Young could meet his *prima facie* burden, the fact that Young was arrested, charged, and prosecuted for the alleged theft from the store serves as a legitimate, non-discriminatory reason for terminating Young's employment. Although Young was ultimately acquitted of the theft by a jury, he does not dispute that at the time of his arrest, Brew City believed that Young had stolen the missing money (*id.* ¶ 54) and that the Ozaukee County Circuit Court prohibited Young from having contact with the store (*id.* ¶ 57). For these reasons, no rational trier of fact could conclude that Brew City discriminated against Young on account of his race. Brew City is entitled to summary judgment on Young's discrimination claims.

## CONCLUSION

Young alleges that his former employer, Brew City, discriminated against him on the basis of his race. Looking at the record as a whole, however, no rational trier of fact could find that Brew City discriminated against Young based on his race. For these reasons, summary judgment is granted in favor of Brew City. Young's complaint is dismissed.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's motion to strike (Docket # 44) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of February, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge